In the Matter of ELIZABETH KING et al., Petitioners, v NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES et al., Respondents.

Supreme Court, Erie County, March 9, 1989

## APPEARANCES OF COUNSEL

*Stamm & Murray* for petitioners. *Robert Abrams, Attorney-General (Allithea E. Lango* of counsel), for respondents.

### OPINION OF THE COURT

JOSEPH J. SEDITA, J.

This petition challenges a regulation of the New York State Department of Social Services. The regulation in question (18 NYCRR 515.5 [b]) precludes Medicaid recipients from receiving prescription benefits if the prescription is written by a doctor who is not considered "qualified" by the Department. Petitioner Galeota's "disqualification" is presently being reviewed in an appropriate proceeding which has not yet been completed. We have found no Federal or State case which has explicitly resolved this issue.

It is the position of the petitioners that regardless of Dr. Galeota's status with the Department of Social Services, he is still a licensed physician. They assert that although the doctor

may be temporarily precluded from receiving payments for *his* medical services by Medicaid, his Medicaid eligible patients should be able to fill prescriptions written by him. Petitioners note that Federal regulations guarantee Medicaid patients reasonable access to Medicaid services of adequate quality (42 CFR 431.54 [f] [4]), and guarantees their right to obtain Medicaid services from any pharmacy which is qualified to perform such services. (42 USC § 1396a [a] [23].)

Petitioners agree that these Federal regulations empower the States to establish reasonable and equitable standards for any such "qualifications". They argue that there is no reasonable basis for linking a right to Medicaid prescriptions with the departmental "qualification" of the issuing doctor. They argue that the Supremacy Clause of the Federal Constitution requires State regulations to be in accord with the relevant Federal regulations and law. *(See, Catholic Med. Center v Rockefeller,* 305 F Supp 1268, *affd* 430 F2d 1297.)

At issue then is the reasonableness (or rationality) of the State regulatory "link up" between physician "qualification" and prescription qualification.

A resolution of this issue requires a review of the main public policy goals of the Medicaid program. The primary public policy goal is to provide necessary, quality medical services to needy citizens. A secondary, but still important, policy consideration is, of course, the wise and careful utilization of public funds in the process of achieving the primary goal.

The act of prescribing medications is by its nature an integral part of the process which begins with diagnosis by a physician. If there is no diagnosis, there can be no remedy prescribed. The effectiveness of the remedy is directly related to the quality of the diagnosis.

If a physician has been properly disqualified from the Medicaid system, there are two questions inherent in using public moneys to pay for his (or her) prescriptions:

1. Is the patient receiving the most appropriate medication for his or her particular medical problem? (Quality of services issue.)

2. Should the taxpayer be paying for prescriptions emanating from a "disqualified" source? (Fiscal responsibility issue.)

There is no doubt that a State may restrict the repayment of Medicaid funds utilizing reasonable standards for determining which doctors will be "qualified" to participate in the

program. *(See, Yapalater v Bates,* 494 F Supp 1349, *affd* 644 F2d 131, *cert denied* 455 US 908.) It is also clear that eligible participants in the program may be required to choose amongst only "qualified" providers. *(See, O'Bannon v Town Ct. Nursing Center,* 447 US 773.)

To mandate that prescriptions from any physician be honored by the program would abdicate the State's responsibility to supervise both the quality of services provided and the responsible expenditure of public moneys. *(See,* 42 USC § 1396a.)

It is our considered opinion that the State regulation in question furthers the assurance of quality services (in this case prescription remedies), and helps to ensure the responsible expenditure of taxpayer dollars. The State regulation in question is, therefore, not in conflict with Federal law, but is in furtherance of its goals and policies.

While we are not unsympathetic to certain patients' loyalty to Dr. Galeota, and the convenience of his office to certain patients, these considerations cannot override the responsibility of the Department of Social Services to insure quality services and fiscal responsibility. The ready availability in our area of inexpensive public transportation guarantees the petitioner patients herein access to other "qualified" physicians who can write any necessary prescriptions after proper review of their conditions. If Dr. Galeota is successful in reversing his disqualification, his patients can easily return to him.

For all the above reasons, it is our considered opinion that this application should be denied. It is not necessary to reach the other points raised by the respondent.